**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
MICHAEL DICKEY,                )
                               )
            Plaintiff,         )
                               )  Civil Action No.15-0577
                               )  (EGS)
            v.                 )
                               )
UNITED STATES OF               )
AMERICA, ET AL.,               )
                               )
            Defendants.        )
_____)
```

## MEMORANDUM OPINION

On July 1, 2013, Plaintiff Michael Dickey ("Mr. Dickey"), an employee of the U.S. Department of Transportation ("DOT"), drove his car into the DOT's parking garage at 1200 New Jersey Ave. SE, Washington, D.C. Compl., Docket No. 1 at ¶ 6. Mr. Dickey alleges that a bicyclist was in his blind spot as he pulled into his parking spot. *Id.* at ¶ 7. The cyclist was forced to stop abruptly. *Id.* Mr. Dickey and the cyclist engaged in an altercation, causing Defendant Kurt Alexander ("Officer Alexander"), a Federal Protective Services officer, and his partner, Gary Brzozwald, an inspector, to arrive at the scene. *Id.* at ¶ 8. After interviews with the altercating parties, Mr. Dickey was placed under arrest for simple assault. *Id.* ¶ 9-12. During his arrest, Mr. Dickey alleges that Officer Alexander pushed and pulled him, tearing one of the belt loops on his

1

pants. *Id.* ¶ 12. Mr. Dickey further alleges that Officer Alexander "used his fingers to manipulate and move Mr. Dickey's genitals and penis . . . ." *Id.* ¶ 13. Mr. Dickey alleges that his genitals and penis were "fondled" six times by Officer Alexander during his search of Mr. Dickey incident to arrest, three times when Officer Alexander used kevlar gloves, and three times when Officer Alexander used latex gloves. *Id.* at ¶ 21-23.

Mr. Dickey alleges two counts against the United States and Officer Alexander in his individual capacity: excessive force and unreasonable search and seizure in violation of the Fourth Amendment (Count I); and assault, battery and intentional infliction of emotional distress under the Federal Tort Claims Act ("FTCA") (Count II). *Id.* at ¶¶ 24-39. Defendants move to dismiss Mr. Dickey's complaint for lack of subject matter jurisdiction and failure to state a claim. Defs.' Mem. Supp. Mot. Dismiss, Docket No. 7-1.[1] Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, Defendants' Motion is GRANTED in part and DENIED

---

[1] The basis for Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction under Rule 12(b)(1) is that "the search of Plaintiff during his arrest [was] a legally authorized touching and the Supreme Court has determined that a search incident to arrest is an authorized warrantless search under the Fourth Amendment and is reasonable under that same Amendment." Defs.' Mem. Supp., Docket No. 7 at 4. Because this argument goes to the merits of Mr. Dickey's claims, the Court's analysis is limited to Defendants Motion to Dismiss for failure to state a claim under Rule 12(b)(6).

in part.

## I. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The pleading standard does not require detailed factual allegations, but should be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Naked assertions without factual enhancements or formulaic recitations of the elements of a cause of action will not suffice. *Id*. Rather, to survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. Plausibility entails that the plaintiff has pled factual content that is not merely consistent with liability but allows the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*.

In considering a 12(b)(6) motion, the Court should liberally view the complaint in the plaintiff's favor, accepting all factual allegations as true, and giving the plaintiff the benefit of all inferences that can be drawn therefrom. *Redding

*v. Edwards*, 569 F. Supp. 2d 129, 131 (D.D.C. 2008) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## II. Analysis

### A. The Qualified Immunity Doctrine

A plaintiff may bring suit against federal officials in their individual capacity for alleged constitutional violations. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). However, qualified immunity protects government officials from civil liability where their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004). At the motion to dismiss stage, a plaintiff must allege sufficient facts to establish that the defendants are not entitled to qualified immunity. *Patterson v. United States,* 999 F. Supp. 2d 300, 311 (D.D.C. 2013) (internal citation omitted). The defendant bears the burden of pleading and proving qualified immunity. *Id.*

As established by the Supreme Court, "the two pertinent questions in determining whether qualified immunity applies are (1) whether a constitutional right would have been violated on the facts alleged; and (2) whether the right was clearly established at the time of the violation." *Shaw v. District of Columbia*, Case No. 12-0538, 2013 WL 1943032, at *4 (D.D.C. May

13, 2013) (quoting *Saucier v. Katz*, 533 U.S. 194 at 201 (2001)). In sum, the facts alleged by a plaintiff must establish that the official violated a right protected by the constitution, and precedent must be sufficiently well established that a reasonable officer would have understood prior to acting that his conduct violates that right.

Here, both of Mr. Dickey's alleged constitutional violations—unreasonable search and excessive force—impinge on the Fourth Amendment, which guarantees the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Each alleged claim will be analyzed below.

> **i. The facts alleged by Mr. Dickey state a claim for an unreasonable search in violation of his clearly established rights under the Fourth Amendment.**

Officer Alexander argues that the search of Mr. Dickey was permitted under the Fourth Amendment because it was incident to his arrest. Defs.' Mem. Supp., Docket No. 7 at 8-9. Mr. Dickey argues that the circumstances of his arrest did not provide Officer Alexander any basis to "perpetrate a sexual assault on him" by manipulating his penis and genitalia six times. Pl.'s Mem. Opp., Docket No. 9 at 8.

The Fourth Amendment generally requires that law

5

enforcement have "probable cause for conducting a search." *U.S. v. Scott*, 987 A.2d 1180, 1195 (D.C. Cir. 2010). However, a critical exception to this general rule are searches conducted incident to arrest. *Id.* As explained by the Supreme Court:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.

*United States v. Robinson*, 414 U.S. 218, 235 (1973). Therefore, reasonable suspicion that Mr. Dickey possessed a weapon or illicit substances on his person was not necessary because Officer Alexander had probable cause to arrest and search Mr. Dickey for simple assault. *See e.g.* Pl.'s Mem. Opp., Docket No. 9 at 4, 8 and 10.

Nevertheless, where a search incident to arrest is unusually intrusive, the search may be deemed unreasonable and therefore in violation of the Fourth Amendment. WAYNE R. LAFAVE, SEARCH AND SEIZURE, A TREATISE ON THE FOURTH AMENDMENT 145, § 5.2(c) (West's Criminal Practice Series, 6th ed. 2010) (hereinafter LAFAVE). In *Bell v. Wolfish*, the Supreme Court established an analytical framework to determine the reasonableness of a sexually intrusive search, holding courts must balance "the

6

scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." 441 U.S. 520 at 559 (1979); *see also Bame v. D.C.*, 637 F.3d 380, 387 (D.C. Cir. 2011) (internal citations omitted); *see also Grissom v. Dist. of Columbia*, 853 F. Supp. 2d 118, 125 (D.D.C. 2012) ("The "unreasonableness" inquiry is a particularized one, taking into account the facts and circumstances of the particular case.") (internal citations omitted).

Under certain circumstances, strip searches have been found unreasonable and in violation of the Fourth Amendment. For example, in *Campbell v. Miller,* the Seventh Circuit concluded that although a search was permissible, the officer's decision to conduct a strip search of a male suspected of possessing marijuana was unreasonable because it was conducted in a backyard where his neighbors could view the search. 499 F.3d 711 at 718. The Court concluded that the search was not reasonable because it involved "public nudity and exposure of intimate body parts." *Id.* Indeed, courts throughout the country have routinely condemned as unreasonable intrusive searches conducted in public. *See e.g. Amaechi v. West*, 237 F.3d 356, 364 (4th Cir. 2001) (noting that "we have repeatedly emphasized the necessity of conducting a strip search in private" and concluding that "[t]he fact that, absent clear justification or exigent

7

circumstances, an officer is not allowed to strip an arrestee on a public street pursuant to a search incident to arrest necessarily means that an officer cannot go even further than simply disrobing the arrestee by actually touching and penetrating the arrestee's exposed genitalia on the public street."); *Hill v. Bogans*, 735 F.2d 391, 394 (10th Cir. 1984) (finding unconstitutional "routine strip searches in a public area of persons detained for minor traffic offenses.").

Here, Mr. Dickey alleges that the search was unreasonable because Officer Alexander "searched and fondled Mr. Dickey's genitals and penis" and "intentionally humiliated Mr. Dickey by searching his genital region six (6) separate times while in a public parking garage while in the presence of both officers and civilian bystanders who worked in the same building where Mr. Dickey was employed." Compl. ¶¶ 31, 33. The facts of this case are notably distinguishable from the authority discussed above because Mr. Dickey does not allege that he was stripped searched.[2] Still, accepting all factual allegations as true and

---

[2] In his opposition brief, Mr. Dickey argues that Officer Alexander's search was "extremely atypical" and best described as a "manual body cavity search." Pl.'s Mem. Opp. at 2, fn 1. Mr. Dickey attempts to overstate his case. As discussed in *Roberts v. Rhode Island*:

> A "strip search," though an umbrella term, generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A "visual body cavity search" extends to visual

8

adopting a liberal view the complaint, the Court cannot conclude that Officer Alexander's search of Mr. Dickey's was reasonable under the Fourth Amendment. Officer Alexander was surely entitled to pat Mr. Dickey down before taking him into custody.[3] However, it is not clear that under the circumstances, searching Mr. Dickey a total of six times with two different sets of gloves was necessary or reasonable.[4] More importantly, Mr. Dickey alleges that his genitalia were fondled in such a way as to constitute a "sexual assault." Compl. 16. Based on these alleged facts, Mr. Dickey has stated a claim for an unreasonable search

---

      inspection of the anal and genital areas. A "manual body cavity search" includes some degree of touching or probing of body cavities.

175 F. Supp. 2d 176, 182, fn 5 (D.R.I. 2000). Therefore, the alleged surface touching of genitalia during a pat-down search incident to arrest that does not probe any body cavity does not constitute a "manual body cavity search."

[3] In *Terry v. Ohio*, the Supreme Court noted that a frisk, presumably less intrusive than a search incident to arrest, includes "a thorough search of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and the entire surface of the legs down to the feet." 392 U.S. 1 at 17, fn 13 (1968) (citing Priar & Martin, Searching and Disarming Criminals, 45 J. Crim. L.C. & P.S. 481 (1954)).

[4] Officer Alexander argues that the search was conducted within his discretionary duties, and therefore permissible. Defs.' Mem. Supp. at 7. According to the Federal Protective Service (FPS) Detention and Arrest Directive which states that a search incident to arrest "should be as thorough as circumstances allow." *Id.*, citing FPS Directive 15.5.2.3. Absent discovery into the circumstances surrounding Mr. Dickey's arrest, Officer Alexander's discretionary duty defense is not persuasive.

under the Fourth Amendment. *See Grissom* 853 F. Supp. 2d at 125 ("Although it is a close question . . . the Court cannot find as a matter of law that the search was reasonable. If Grissom is able to provide evidence supporting her allegations that the magnetometer was used to rub her genitals and that the search continued after she asked the officers to stop, she might succeed in proving that the search was unreasonable under the circumstances.").

The Court also concludes that, assuming Mr. Dickey's allegations are true, any reasonable officer would have understood that, at the time Mr. Dickey was taken in to custody, repeatedly fondling an individual's genitals incident to their arrest would constitute a violation of that persons clearly established constitutional rights. *See e.g. Stewart v. Rouse*, 1999 WL 102774, *5 (N.D. Ill, Feb. 22, 1999) (denying qualified immunity to Officer who allegedly fondled Plaintiff during pat-down search incident to arrest because "the parameters of a search incident to arrest as an exception to the warrant requirement were well-established in 1997" and "objective police officers could agree that [aggressive groping, grabbing of groin and breasts] exceeded what was permitted by established law.").

Defendants argue that "the true test for qualified immunity in this case was whether it was clearly established that Officer Alexander was prohibited from alleged touching or manipulating

10

the Plaintiff's genitals through multiple layers of clothing . . . ." Defs.' Mem. Reply at 8. Defendants are incorrect. The true test for qualified immunity in this case is whether, as Mr. Dickey alleges, the law clearly prohibited fondling such that it constituted "sexual assault." Compl. ¶¶ 16-17. It did. *See, e.g. Anderson v. Cornegjo*, 199 F.R.D. 228, 259 (N.D. Ill. 2000) (noting that "no Customs inspector could reasonably believe that it could be appropriate to fondle a female traveler's breasts, crotch area, or buttocks, even above her clothes.")

Defendants also emphasize that Supreme Court precedent establishes that a search of an arrestee will be a "relatively extensive exploration of the person." *Id.*, citing *U.S. v. Scott*, 987 A. 2d 1180, 1195 (D.C. 2010). This often cited language is from the Supreme Court's decision in *Robinson*, where the Court quoted with approval language from *Terry*. *See Terry*, 392 U.S. at 25; *Robinson*, 414 U.S. at 227. Two points deserve emphasis. First, the Court in *Terry* noted that "a thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and the entire surface of the legs down to the feet." *Terry*, 392 at fn. 13. A thorough search of the groin area is distinct from the fondling of genitalia. To this end, the Court in *Robinson* also noted that it would be willing to find unconstitutional a search that was "extreme or patently abusive." *Id.* at 477. A search incident to

11

arrest that includes fondling alleged to constitute sexual assault is "extreme" and "patently abusive." Put another way, no reasonable objective officer would conclude that an "extensive exploration" of a person could include fondling and sexual assault alleged in this case. For these reasons, Defendants' Motion to Dismiss Mr. Dickey's unreasonable search claim under the Fourth Amendment based on qualified immunity is DENIED.

> **ii. The facts alleged by Mr. Dickey do not state a claim for excessive force in violation of his Fourth Amendment rights.**

Defendants argue that the facts pled by Plaintiff are insufficient to state a claim for excessive force. Defs.' Mem. Reply at 3 ("Plaintiff alleges that the illegal forcefulness of the arrest is evident from the single ripped belt loop on the Plaintiff's pants. Plaintiff does not allege that this occurred because the Inspector was holding onto the belt loop, if the loop was hooked on the handcuffs, or if it occurred when he was placed in the police car wearing handcuffs, etc."). Mr. Dickey argues that the force used by Officer Alexander started during the search of Mr. Dickey incident to his arrest and "escalated to include Defendant Alexander breaking off one of Mr. Dickey's belt loops." Pl.'s Mem. Opp. at 7.

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a "careful balancing of the nature and quality of the intrusion on

12

the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotations omitted). The reasonableness inquiry is an objective one: that is, the court must determine whether the officer's actions were "objectively reasonable" in light of the facts and circumstances, regardless of any underlying intent or motivation. *Id.* Moreover, the Court is mindful that police have authority to use "some degree of physical coercion" when arresting a suspect, *see Graham,* 490 U.S. at 396, and that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

In this case, it is alleged that "in the course of conducting his arrest, Defendant Alexander forcibly pushed and pulled Mr. Dickey, which resulted in the ripping of one of Mr. Dickey's belt loops." Compl. ¶ 12. Accepting this allegation as true and drawing all inferences in Mr. Dickey's favor, the Court concludes Mr. Dickey has failed to allege facts sufficient to state a claim for excessive use of force. *See e.g. Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009) (holding that even where plaintiff was not moving or resisting, the arresting officer's action of forcefully pressing upwards on plaintiff's

13

arm before handcuffing him, causing him pain, was not excessive force); *Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C. Cir. 1999) (concluding that a police officer who grabbed the arrestee by the arm and pulled her out of the vehicle's passenger seat used a reasonable level of force and therefore committed no constitutional violation); *Martin v. Malhoyt*, 830 F.2d 237 (D.C. Cir. 1987) (finding that the arresting officer did not use excessive force by allegedly grabbing a driver by the waist, throwing him back into the driver's seat and slamming door on his legs); *compare with Rudder v. Williams*, 666 F.3d 790, 795 (D.C. Cir. 2012) (holding that plaintiffs' allegation that an officer's unprovoked use of a baton against children aged five and 15 constituted a "degree of force unjustified by the circumstances.").

Because Mr. Dickey only alleges that his belt loop was torn due to what he characterizes as "pushing" and "pulling" by Officer Alexander, he does not allege facts sufficient to state a plausible claim for excessive use of force in violation of his Fourth Amendment rights. As such, Defendants' Motion to Dismiss Mr. Dickey's claim of excessive force under the Fourth Amendment is GRANTED.

### B. Mr. Dickey states a claim for battery, assault and intentional infliction of emotional distress under the Federal Tort Claims Act ("FTCA").

Void of a single case citation discussing the FTCA,

14

Defendants contend that Mr. Dickey's FTCA claims fail based on the same arguments set forth in opposition to Mr. Dickey's unreasonable search claim. Defs.' Mem. Supp. at 13-15 ("Even taking the facts as pled, [n]one of these searches were unreasonable or unlawful under the circumstances and were authorized by law; and as authorized searches, the touching of the Plaintiff does not amount to nor does it constitute assault, battery and intentional infliction of emotional distress."); Defs.' Mem. Reply, Docket No. 10 at 8 ("As discussed above, although the Plaintiff has alleged that Officer Alexander's search violated the rules for a search indecent to arrest, the Courts have clearly established such a search will be a 'relatively extensive exploration of the person.'") (internal citations omitted)). Plaintiff's briefing of his FTCA claims, consisting of three conclusory paragraphs, is equally unhelpful. Pl.'s Mem. Opp. at 7 and 14.

The United States is immune from suit absent an express waiver of its sovereign immunity. *Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991). The FTCA was enacted in 1946, designed primarily to "remove the sovereign immunity of the United States from suits in tort." *Levin v. United States*, 133 S.Ct. 1224, 1228 (2013) (internal citations omitted). The FTCA gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property, or

personal injury or death caused by the negligent or wrongful act or omission" of a federal employee "acting within the scope of his office or employment." *Millbrook v. U.S.*, 133 S. Ct. 1441, 1443 (2013); 28 U.S.C. § 1346 (b)(1).

However, the statute includes a number of exemptions that protect the Government from liability for certain torts. *Id.* For example, the statute includes an "intentional tort exception," which preserves the Government's immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." § 2680(h). This means that government employees cannot be sued for these intentional torts under the FTCA. However, in 1974, Congress carved out an exception to Section 2680(h), commonly referred to as the "law enforcement provisio," which extends the waiver of sovereign immunity to six intentional torts when alleged as rising out of the wrongful conduct of law enforcement officers. *See* Act of Mar. 16, 1974, Pub. L. 93-253, § 2, 88 Stat. 50. This means that "anyone empowered by law to execute searches, to seize evidence or to make arrests for violations of federal law" may be sued for the following intentional torts: assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. *Id.* In 2013 the Supreme Court held that "the waiver effected by the law

16

enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." *Millbrook v. United States*, 133 S. Ct. 1441, 1446 (2013).

Here, Mr. Dickey's battery and assault claims are feasible under the FTCA because the waiver of sovereign immunity is extended to battery and assault by the law enforcement proviso. Mr. Dickey's intentional infliction of emotional distress claim is possible because it is not one of the intentional torts listed by Congress in the § 2680(h) exception. Each of these claims are plausibly alleged in connection with Mr. Dickey's claim of an unreasonable search in violation of his Fourth Amendment rights. The burden is on Defendants to show that Mr. Dickey's FTCA claims should be dismissed. Because Defendants do not make any persuasive arguments to that end, Defendants' Motion to Dismiss Mr. Dickey's FTCA claims is DENIED.[5]

---

[5] Plaintiffs suing under the FTCA must exhaust their administrative remedies prior to filing suit. *McNeil v. United States*, 508 U.S. 106 (1993). "The exhaustion requirement is jurisdictional." *Hurt v. Lappin*, 729 F. Supp.2d 186, 190 (D.D.C. 2010) (*citing GAF Corp. v. United States*, 818 F.2d 901, 904) (D.C. Cir. 1987). That is, exhaustion is a "mandatory prerequisite" to a court suit under the FTCA. *Id.* Here, Mr. Dickey alleges that he exhausted his administrative remedies by "sending notice of his claim to the Federal Protective Services on or about May 13, 2014 (less than a year after the incident

### III. CONCLUSION

After consideration of the motion, the response and reply thereto, the applicable law, and the entire record, for the reasons discussed in this Memorandum Opinion, Defendant's Motion is GRANTED in part and DENIED in part. An appropriate order accompanies this Memorandum Opinion.

**Signed: Emmet G. Sullivan**
**United States District Court Judge**
**March 30, 2016**

---

occurred), and more than six (6) months have expired without a response." Compl. ¶ 23. Although no evidence of this exhaustion is attached to Mr. Dickey's complaint, Defendants do not contest his claim of proper exhaustion.